and Davidson County, Tennessee, argument not to exceed 15 minutes per side. Mr. Holmes you may proceed for the appellant when you're ready. Well we made you last, gave you a little extra time. Thank you. I'll be back tomorrow. Is that right? Up versus Telecheck. Wow. May it please the Court, Morton Holmes of the Nashville Tennessee Bar on behalf of Plaintiff Claude Grant. The sole issue on appeal here is whether the District Court erred in granting defendant's motion for summary judgment on Mr. Grant's retaliation claim. The District Court held that Mr. Grant had presented sufficient proof to create a genuine issue of material fact as to the first three elements of a retaliation claim. That he had engaged in protected activity, the exercise of protected rights were known to the defendant, and he experienced an adverse employment action. And started to appear to rule that there was a causal connection by indicating that because of Mr. Grant's participation in the class action as the lead representative plaintiff in a litigation which at that point had lasted ten years, had cost Metro hundreds of thousands of dollars, multiple appeals, eight day trial, that he was a thorn in Metro's side. Curiously then, the District Court held that Mr. Grant had failed to establish that but for his participation in protected activities, the awarding of the job to Ms. Jackson, the adverse employment action, who was also African American, would not have occurred. And the court said that under Nass- What about this way of thinking about the case that maybe the hardest thing, it seems to me, for your side is that this whole list hiring process was pretextual to harm your client, retaliate against your client for his being the lead plaintiff in this prior case. I mean, the list concept didn't come out of nowhere. It's recommended in the Tennessee Civil Rules. And you can understand the efficiencies of it. You could also understand how it could lead to mistakes. But it just seems uncontradicted that that's how Jackson was hired. And your client wasn't on the list. Well, off the eligibility list. No, but I'm just making the point that what happened was a reality. I mean, there was a hiring for this slot off of the list. And so it just seems like the only way you can get anywhere is by showing that this was some clever contrivance to make it impossible for your client to get this job. And that just seems quite implausible to me. Well, I think there's a genuine issue of material effect on that. And, I mean, the whole theory is that Metro abuses the process to- I think everybody knew about the list process, but your client. That's not how it works. Everybody knew about this. Now, he may not have. I get that. But it wasn't a hidden point. That's what seems odd to me. Well, I mean, it's true that there are eligibility lists that they do use periodically. What they're trying to argue is that there was not an adverse employment action because he didn't apply for the position. And the position that he didn't apply for was the job that was not the one that was awarded to Ms. Jackson. And that was the position in Stormwater. So if he would have known about that this was going to be later filled, he would have applied for the position. But there is material evidence. I mean, there's a dispute in the record even about whether the job was posted, not posted. We have Ms. Jackson who said she thought it was posted and that she applied for it. I know it was not posted as a separate job. It was- It used to be a prior eligibility list from another job. That's correct. Is that okay or are you just saying that's illegal per se? No, we are saying they used it in this instance to prevent Mr. Grant from competing for this particular position. That this position became open, that Mr. Grant was more qualified than Ms. Jackson. Mr. Grant had more experience in Metro Water than virtually anyone. This lady had an engineering degree, right? She did have an engineering degree and as we learned in the first Metro Water case, Metro Water frequently puts in non-essential job requirements to exclude people from a position. The point is on this particular position, having an engineering degree should not have been a part of the criteria. The pretext here is that they used the eligibility list to prevent Mr. Grant from competing for this position. But he wasn't prevented. Isn't that an exaggeration? No, we're talking about- I thought some people applied for jobs so they could be on lists because everybody knew how this worked. No, not necessarily. The job that was posted was for a position in one of three other divisions of Metro Water. Those positions required engineering degrees. Those required an engineering degree. What does somebody do? You apply even though you don't have the requisites? You can, but then Metro Main Human Resources will kick your application out because you do not meet the minimum qualifications. Mr. Grant did not apply for that position because it was not a stormwater position and it required an engineering degree. I guess he could have applied for that and then turned it down if they said, well, we're going to pick you for this other job. Would that make him still eligible for the job he wanted later? Well, if they would have said- because it has some vague language about how this may be used later for a future position, but it's very clear that with the original job posting it did not include stormwater and that was the division that Mr. Grant was interested in. And that ends up being the position that was created and filled through the eligibility list. And it's our position that they- But that just proves that the list approach is not really a great approach or it underserves things in some settings, overserves it in others. It doesn't prove it's a disguise for retaliation or any other form of discrimination. And what's odd about it is it was so well known and I guess it's recommended by the civil service rules. But the point, Your Honor, is that they used the eligibility list to preclude Mr. Grant from competing for this particular position. We're not arguing that it was illegal for them to use an eligibility list. What we are arguing is in this instance what they could have done and what they normally do is post a position, allow those to apply for it, have the interview process and fill the position. If they had done that, Mr. Grant would have applied for the position. Even if it had required an engineering degree, he still would have applied for the position and we would take it. So the list approach is only valid if you post separately? No, no. It is permissible for them to fill a position off the eligibility list. But what we're arguing is they used that in this instance knowing that if they posted the stormwater position, Mr. Grant would have applied for it. Okay, and so what evidence supports that? Well, I think you go back then to why they did not want Mr. Grant to have the position. They had a motive. They had the motive and the motive being that Mr. Grant was the lead plaintiff in the Metro Water Class Action. What connects the motive to the list? That seems speculative. Excuse me? What connects motive to the list process? That seems speculative. Well, no, it's not, Your Honor, because... Okay, so what connects it? Okay, here's the connection. There is a position that they know that needs to be filled in stormwater. They know Mr. Grant wants that position. They know if they post that position, he will apply. So what they do is they say, okay, instead, we will use the eligibility list route to fill this position to preclude Mr. Grant... Did they implement this when they posted the first job, or did they implement this only when the second opening came? Implement. I mean, you're saying it's a scheme. They're motivated to hurt him. I'm asking you, when they acted on those motives, were they acting on those motives when they posted for the initial job that your client did not apply for? No, they knew he was not interested in the initial job. The initial posting was for a position in divisions other than stormwater. What Judge Sutton, I think, is asking, or at least I'm asking, is did this plan develop that early? Was that part of the plan in posting these three engineer jobs, that we're going to post these, he's not going to apply, he's not an engineer, and when we actually do the stormwater position, we're going to use these so that we don't have to use him? I don't think so, and there's no proof of that. I think that it became a matter of convenience. They originally, a year and a half before, needed positions filled in divisions other than stormwater. They posted the position. Several individuals applied, including Ms. Jackson. I'm sorry, the three engineering positions? Three positions. This was not a plan that was conceived a year and a half previously. I think what happened is that Metro Water posted the initial job announcement for positions in divisions other than stormwater. There were several positions at that point. Ms. Jackson applied. Ms. Jackson applied and did not get one of those positions. Then, a year and a half later, when there was a need to fill the stormwater position, and they knew Mr. Grant was interested in that, had been interested in years, and actually was more qualified than Ms. Jackson, instead of going through a job posting process, which they could have done, they decided they would pull off the eligibility list to put Ms. Jackson into the position and exclude Mr. Grant from the opportunity to compete. That's our... Okay, so that's a theory. So what evidence do you have that makes it more likely than not that that's, in fact, why they used the list approach? I think you then go back to Mr. Grant's participation in the Metro Water class action. As Judge Crenshaw indicated, that Mr. Grant had been a thorn in their side for the past ten years because of the programmatic relief that had been implemented in the class action when the court ruled in favor of the plaintiffs on disparate impact. Metro had to pay $270,000. Had what? Metro had to pay over $270,000 in special master fees on the programmatic relief ordered by the district court in the Metro Water class action. And that ultimately was reversed. The disparate impact ruling was reversed. But Mr. Grant, as the lead plaintiff, has cost Metro Water hundreds of thousands of dollars in special master fees, $270,000, not to mention attorney's fees and time and costs. We also presented proof at the original trial, and the proof is in the record, that Director Scott Potter has negative animus toward Mr. Grant. And it's our theory that he let it be known that Mr. Grant would not be promoted because of his participation in the Metro Water lawsuit. Okay. You get your full rebuttal. Thank you. Thank you. Mr. Fox. May it please the Court, I represent Metro, Metropolitan Government of Nashville. Can you speak louder? Yeah, may it please the Court. My name is Brooke Fox. I represent Metropolitan Government of Nashville. The district court correctly found the summary judgment was appropriate in this case. He said no reasonable jury, not a theoretical possible jury, but no reasonable jury, which is the standard, would ever find that these dots need to be connected, that in Metro Nashville's eagerness to retaliate against Mr. Grant, they selected someone else from that same class action, the same protected class member, African-American. Yeah, but, you know, he was the lead plaintiff. There is a difference between being a class member and a lead plaintiff. Are I right? He was the lead plaintiff in the class action? I don't know that he was the lead plaintiff, but we can accept that for purposes of summary judgment. There were nine plaintiffs who testified. He was one of the representatives. Why do you claim that? Jackson testified? Jackson didn't testify. Jackson was a mandatory member of the class. The reason they're essentially on the same footing, which is what the district court explained, is that during the time that Ms. Jackson was selected for this position, there's no proof in the record whatsoever that that class action was on any decision maker's mind at that time. The case, that class action had sat dormant for over two years during that time. No filings, no phone calls, no e-mails, nothing for over two years. That's not a protected activity under Title VII. How much time lapsed between the time that case was resolved and this job came open? This case was finally resolved when they started moving on the case after Ms. Jackson was hired. Then they moved on the case two months after that, and it was resolved finally earlier this year. But what I'm trying to say is it sat dormant without a single thing happening at all for over two years, and that's during the time period that Ms. Jackson was selected. There's no case law anywhere that says you can connect those dots that that's a case sitting dormant is a protected activity. To be a protected activity under Title VII, it's got to be the initiation or instigation of opposition under Title VII, not having a case just linger, hang out there without anything being done, no trial, no— But it was pending. I'm not following this point at all. Okay. I think you can—it's definitely protected conduct. If a court's just, for whatever reason, not doing anything with the case, that doesn't become unprotected conduct. Well, okay, and I'll move on, but my point— I would, but keep going. My point is that the plans, Mr. Grant wasn't doing anything with the case for over two years, so he has to show that it's on the decision-maker's mind to connect these dots. I don't think you're going to get anywhere with these arguments, so— Okay, all right. The other point, of course, is more to what the district court explained. Why don't you just go with what was the key point with his argument? We got to the point where I think there is—you could say there's a triable issue of fact of whether there was a motive, an explanation for trying to retaliate. It seems to me that's a pretty fair point. He acknowledged that the scheme to retaliate did not involve the first posting. It did not involve having lists at all, that that's not it, but that it turned out that once Jackson hadn't gotten the other job, Grant was not on the list. That's when they acted on their motive. And so then, you know, that's the question of whether there's a triable issue of fact on this record. Right. And so that's what I would try to respond to. Thank you, Your Honor. And, Your Honor, as you pointed out, it's uncontradicted. It's uncontradicted, and there's no competent summary judgment evidence that had been submitted to contradict that stormwater division was being reorganized, that this is a new— So maybe it's a little fishy that it wasn't posted. What about that fact? In other words, you're allowed to hire off your lists, but isn't it a good idea to post? It may be a good idea, and like Your Honor pointed out, it's not a perfect system. There may be other people who maybe didn't know about the position, maybe even people who are more qualified than Ms. Jackson. We don't know. I mean, there may be people who didn't know about it and didn't apply, such as Mr. Grant. He says he didn't know about it. But that doesn't mean it was all—the world revolves around him and that every business decision the stormwater makes is somehow geared towards him. He hasn't connected those dots at all. The fact of the matter is the managers, all in their depositions that he took, they explained that, look, the stormwater division is reorganized. This is not the same position that Ms. Hill had, the earlier person in the position who didn't have an engineering degree. Because Ms. Jackson, with an engineering degree, can take it a step further. She's able to get her boots on and go into the field and make calculations based on what they said, science and engineering, so she can tell the crew, okay, we need 150 feet of piping there. What did this job have in common with the other three that she applied for? It's a generic engineer three position. So it's a metro-wide engineer three position. And the managers explain in their deposition— And any of these people who hold engineer three can— are qualified to be in any of these different jobs. That's right. As another department, say public works, if they suddenly have a need for engineer three, they may draw from that same list so long as downtown main HR has the list and it's alive, they can draw from that, interview for that particular position, and then hire somebody off that list. And that's what happened here. As Stormwater decided we need to elevate this position, we've reorganized these job duties and responsibilities to an engineer three position so that we don't have to keep going up to Tom Palco or over to Rick Swift, an engineer, stop the crews, and let's go get an engineer involved. Let's elevate it so someone like Ms. Jackson can just carry the conversation forward in the field. And all that was fleshed out in the depositions. So that's why downtown main HR maintains these lists for a period of time, two years or so. And so by the time Stormwater said, you know what, we need a job too. We need an engineer three, not just system services, operations, or engineer, which is on the original post. But what percentage of jobs are filled off of lists? Does the record show that? I mean, I realize it's a common phenomenon. It's recommended by the civil service rules, but is this a 10% category? The rate doesn't reflect a percentage, but these positions are vetted through the civil service commission. These are all civil service positions. Most jobs are posted and announced. There are some times when a lateral transfer is allowed, say if a department gets reorganized over here and they have people they need to find a home for. Sometimes there's lateral positions that are done, and those aren't necessarily posted. So there are some exceptions like that, but most jobs are posted. And like Your Honor said, there's been no contradiction about the fact that this was posted and was properly posted. It was what? Posted and was properly posted. Okay, I am so confused. I thought this job wasn't posted. They're arguing that this particular Stormwater position was not posted. But the engineer three, it's generic. You're saying the initial one was posted. Yes. But the one that Grant wanted and didn't get was not posted. That's right. So by emphasizing that, you're having us all with cognitive dissonance. Why is this helping you? Well, I'm saying that someone like Ms. Jackson knows to get her name on a list, and this is what the managers all do. Your point is he should have known how this works. He's the longest serving Metro Water employee. But the problem is that he wasn't an engineer. That's the other problem for him, is that how can it be a materially adverse employment action when he's not even qualified for the position? Well, he disputes that, and then there's no vehicle to dispute it  The only way we will consider you is if you apply to another job that you're not qualified for according to us, and we're not even going to entertain whether this is a proper classification of this job. He wants the court to overlook, really, the fact that it's an engineer position, and he's not an engineer. The job he wanted and didn't get. This job he says now he wants in Stormwater. How would he challenge that? Well, again, it's uncontradicted. The district court chastised him for not contradicting this with confidence summary judgment evidence. He points to the special master analysis, which was a previous position, and that entire order this court reversed, vacated, made a nullity, and a special master had come from the plaintiff's expert's firm in violation of Rule 53. That special master analysis is complete nullity, and that's not confidence summary judgment evidence. That's the only thing that they put in support of this notion that it didn't require an engineer degree. So that point stands. It required an engineer degree. Mr. Grant's not an engineer, so there's no case in the country that says that that's materially accurate. How would Grant have gone about applying for this job with the argument that he is qualified and that he can do the job? How would he have done that? He could not have. Just as opposing counsel said, his application would have been kicked out. So how do you require, how do you say that somebody can't get through the door because they never applied when their argument is that I was actually qualified for this job and there was no way for me to apply because of the way they did it? Well, frankly, I think the more relevant argument is the fact that not that he applied, not that he didn't apply. It's more the fact that he's not an engineer. You would have been kicked out of both applications. Sort of. What's the harm here? Because he wouldn't have been able to get this job any way it required an engineer. Okay, so then the court addresses was this engineer requirement pretext? Was it real? Was it a legitimate requirement? Or was it put there to keep him out? And then you engage with that issue. But you're saying he never gets there because he didn't apply for a job that he couldn't apply for. Well, I want to emphasize today. You what? I want to emphasize today the reason he doesn't get there is because he could never have fulfilled the application requirements anyway. He's not an engineer, and it's uncontradicted that it required an engineer degree. So I think—oh, go ahead, Judge Sonner. You're saying that if it's been posted for this particular job rather than taking it off a previous post, that he wouldn't have been chosen anyway because he didn't have the qualifications? That's right. His application would have been kicked out of the main HR, like you just said. That's right. Even in his perfect world, if there had been Engineer 3, stormwater position posted, it wouldn't have mattered because his application would have been kicked out. Just the one thing I want to make sure. I don't think I appreciated before the argument. Had he applied to the first job, I do not say anything about not being an engineer. I got that point. Had he applied for that first job in this instance, would he have remained on the list for the second job or not? Yes, he would have remained. He would have been, okay. If he had been deemed eligible. If we assume that he would have been deemed eligible. But you're saying he wasn't eligible. I'm saying he wasn't eligible. No, he's making the point it's the same problem the second time around. It's the first. I'm sorry if I'm not addressing it. I'm sorry. Okay, it is not— You're saying he wasn't eligible. He wasn't eligible. He would never have been on an eligibility list. Right. I'm saying if we buy for the sake of argument, if he had been deemed eligible somehow, yes, then he would have been still on that list and could have been drawn. It's the same either way. He's either not an engineer for either job, in which case he's thrown him off of both application processes, or he's treated as potentially one for both jobs, in which case he's on the list. It has to be one of those two. That has to be what you're saying. You're saying he wouldn't have been on the list. Even if he had applied for the first job, he would not have been on the list for this job. Yes, that's right. But only because they consistently require when they say engineer, they consistently mean it for all jobs. Yes, it's a generic engineer three position. There's no way to challenge whether that requirement for this job was a legitimate requirement. He could have gone to the Civil Service Commission and said, can you relax that requirement? But he didn't do that in this case. There's no evidence. He didn't know it was there. He knew the engineer. three job out there that multiple departments draw from, a high-level position that he says he wanted. So he could point to these different positions and go to the commission and say, hey, these different positions, can I be deemed qualified for one of those? Because it says right now engineer three engineering degrees required. But he didn't do any of that. Any kind of rule by the city that says you can substitute experience for the degree? Like an engineer, do you work 20 years? It's theoretically possible to go to the commission. But here it's unrefuted that an engineering degree was required. All the managers were in lockstep here saying, absolutely, this took it to another level. That's what Ms. Jackson is able to bring to this spot. My time's up. All right. Thank you. Mr. Holmes. Thank you, Your Honor. Just briefly on the issues that have been brought up here, I would draw the court's attention to pages 22 to 26 of our brief, which addresses the fishiness about the fact that this position was not posted. If they had posted this position, Mr. Grant would have applied. The second one. The second one. He would have applied and taken the position that they put in a non-essential requirement to exclude him, which is what had been argued previously in Metro Water and the class action. Of course, they'd done the same thing with the first posting, which you agree was not part of the scheme. But he was not interested. That was a non-stormwater position. I know, but it undermines the idea that this is a scheme. If the very first – the ball gets rolling initially with a posting where they require an engineer, right? He doesn't worry about it then that he's not an engineer. The fault in that logic is that this job requires an engineering degree, the second job, which it does not. Are you saying that it was also an unnecessary qualification in the first posting? Not necessarily. Not necessarily. But those are different jobs. And the point is Metro Water just puts a title on stormwater engineering three when it does not require an engineering degree. And focusing on that point, if you look at beginning at page 23 of our brief, is that in discovery we started asking, where's the job description? Where's the description showing the essential job requirements, what's required here of this position? They couldn't produce it. And then it magically appears the second day of depositions, and questions were asked, when was this job – when was this created? Who created it? And all of those questions – so there's a genuine issue of material fact, whether they just cooked up the essential job duties. Well, what were the answers to those questions? Where did this come from? Who created it? When? They couldn't give an answer to that. And there was conflicting testimony on how it was created, when it was created, why it was created. So the bottom line is that this whole second position, the filling of it, is extremely fishy, and even one of the applicants – well, he said he was on the eligibility list, that he was called out of the blue, didn't even know what it was about, and asked if he wanted to interview. And, again, all of that is, I think – Well, that's the nature of an eligibility list, right? That would make sense, that he's called out of the clear blue, because – He was on the first list. He was on the first list. But they didn't tell him what the job was about, what it entailed, what the duties were. They didn't read – they didn't send him a description. They didn't send him a description. And then the job description surfaces – He's an engineer? He is an engineer, yes. This one that was called out of the blue. Yes, that's correct. Thank you. All right, thanks to both of you for your helpful arguments and briefs. The case will be submitted, and the clerk may adjourn court.